**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

*In the Matter of the Application of*

**MINATEC FINANCE S.À.R.L.**,

                                         Petitioner,

        - v -                                              Civ. No. 1:08-CV-269
                                                                      (LEK/RFT)

**SI GROUP INC.**,

                                         Respondent.
_____

**APPEARANCES:**                                        **OF COUNSEL:**

SALISBURY, RYAN LAW FIRM             PATRICK P. SALISBURY, ESQ.
*Attorney for Petitioner, Minatec Financial S.à.r.l..*
1325 Avenue of the Americas, 7th Floor
New York, New York 10019-6026

MILBANK, TWEED LAW FIRM              GEORGE S. CANELLOS, ESQ.
*Attorney for Respondent, SI Group Inc*.      SUSAN HENSLER, ESQ.
1 Chase Manhattan Plaza
New York, New York 10005-1413

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**

       Petitioner Minatec Finance S.à.r.l. (hereinafter "Minatec"), a corporation organized under the laws of Luxembourg, makes an application, pursuant to 28 U.S.C. § 1782(a), to conduct discovery of SI Group Inc. (hereinafter "SI Group"), a United States corporation located in the Northern District of New York, for use in currently pending proceedings in Germany.[1] SI Group

---

[1] Minatec's Application is comprised of the following: (1) the Application; (2) Ex. A, Share Purchase Agreement in Chemtec Leuna Gesellschaft für Chemie und Technologie mbH (hereinafter "Chemtec") and Schenectady Germany Holding GmbH (hereinafter "SGH"); (3) Ex. B, Germany Action Complaint, dated February 1, 2008); (4) Ex. C, Patrick P. Salisbury, Esq., Lt., dated Jan. 11, 2008; (4) Ex. D, Patrick P. Salisbury, Esq., Lt., dated Jan. 25, 2008; Frédéric Gauchet, Decl., dated Mar. 7, 2008; and Thomas Moritz, Esq., Decl., dated Mar. 7, 2008. Dkt. No. 1.

opposes this Application.² As permitted, Minatec files a Reply to SI Group's Opposition.³

## I. BACKGROUND⁴

### A. The Relationship of the Parties

On August 17, 2006, pursuant to a Share Purchase Agreement, SI Group and Schenectady Luxembourg S.à.r.l sold 100% of their shareholdings in Chemtec and SGH to Minatec. Dkt. No. 1, Ex. A, Agreement. The following day, Chemtec's and SGH's assets, books and records were transferred to Minatec. Relevant provisions of the Share Purchase Agreement are summarized as follows:

| | |
|---|---|
| § 3 | set forth the representation and warranties of the parties, particularly SI Group. Noting that there is a net operating loss, § 3.12 states that SI Group Companies have not "wilfully taken any action in order to reduce the amount of such net operating losses or to impede Company's ability to use such loss carry forward[.]" |
| § 12.9 | The Agreement would be governed by German Law. |
| § 12.10 | Frankfurt au Main would be the exclusive venue for all disputes between the parties arising under the Agreement. |

*Id*.

Minatec contends that after the closing and assuming control of the businesses and assets, it discovered that SI Group concealed critical information regarding the likelihood of a substantial post-closing tax liability of Chemtec and SGH and intentionally mislabeled highly toxic material

---

² SI Group's Opposition to Minatec's Application is composed of the following: Dkt. No. 11, Mem. of Law, dated Apr. 9, 2008; Dkt. No. 12, Werner Müller, Esq., Decl., dated Apr. 9, 2008, with Ex. A, German Code of Civil Procedure (ZPO); Dkt. No. 13, Thomas Masterson, Decl., dated Apr. 9, 2008; Dkt. No. 14, Thomas Kleinheisterkamp, Esq., Decl., dated Apr. 9, 2008; Dkt. No. 15, Stefan Kroeker, Esq., Decl., dated Apr. 9, 2008; and, Dkt. No. 16, Christian Brodersen, Esq., dated Apr. 9, 2008.

³ Minatec's Reply to SI Group's Opposition consists of the following: Dkt. No. 17, Mem. of Law, dated Apr. 22, 2008, and Dkt. No. 18, Frédéric Gauchet Decl., dated Apr. 22, 2008.

⁴ For the most part, there is hardly any disagreement on the underlying facts, obviating the need to make specific references to the record. References to the record will be necessary when disagreements and contentions are noted.

it produced called "DiBoc." Dkt. No. 1 at ¶¶ 5-11. In particular, Minatec asserts that SGH concealed certain information that should have been disclosed to Minatec when SGH wrote down the value of its shares in 2004, thus violating the warranties and representations in the Agreement. This assertion includes a charge that SI Group made such a write down "in an attempt to make up for the loss of unusable net operating losses caused by SI Group's failure to properly register in Germany a profit pooling agreement entered into by Chemtec." *Id.* at ¶ 5. In August 2006, the German tax authorities began an audit of the "tax transaction," which, Minatec submits, may have substantial tax consequences for it. As to the alleged mislabeling of DiBoc accusation, Minatec complains that this highly toxic material was improperly labeled with a far less hazardous designation "Xn" when it should have been designated T+, for very toxic, and this improper labeling, discovered after the closing, may have or will place employees and customers in peril. *Id*. at ¶¶ 7-9. Minatec claims that SI Group purposely failed to disclose its knowledge of the mislabeling of this product, thereby, violating the warranties and representations of the Share Purchase Agreement.

On January 11, 2008, Minatec placed SI Group on notice of its belief that SI concealed material facts and information pertaining to the tax audit which was reviewing Chemtec and SGH's handling of a profit pooling agreement. Dkt. No. 1, Ex. C., Pet'r. Lt., dated Jan. 11, 2008. Minatec's Letter sought documents relevant to the German tax audit and the opportunity to depose Adam Jameson and Rick Barlow, officers of SI Group, whom Minatec believes have personal knowledge of this tax transaction. *Id*. Within two weeks of the January 11th Letter, on January 25, 2008, Minatec sent another letter, but this time discussed SI Group's purported mislabeling of the toxic chemical, DiBoc, requesting again the opportunity to interview Messrs. Jameson, Barlow, and

anyone else who would have knowledge of these events, and the production of all documents pertaining to this subject matter. *Id*. Ex. D., Pet'r. Lt., dated Jan. 25, 2008. Both letters evince an implied threat to seek § 1782(a) discovery if SI Group resisted Minatec's requests for discovery. Rather than responding to Minatec's correspondence, SI Group initiated a lawsuit in Germany.

### B.  German Litigation

On February 1, 2008, SI Group sued Minatec in the Regional Court in Frankfurt, Germany in the case entitled *SI Group Inc. and Schenectady Luxembourg S.à.r.l v. Minatec Finance S.à.r.l.* (hereinafter the "German Action") seeking declaratory relief that would establish that Minatec is not entitled to pecuniary relief under the Share Purchase Agreement for possible losses that may result from the German tax audit and the alleged mislabeling of DiBoc. Dkt. No. 1, Ex. B, German Compl. at ¶¶ 1 & 2.  On March 13, 2008, the German court issued an order which initiated the service of the German Complaint upon Minatec and gave Minatec more than a month to respond to the Complaint. Dkt. No. 15, Kroeker Decl. at ¶ 3.  This Court is unaware of any subsequent rulings by the German Court rendered after the filing of this Motion and, as far as we know, no motion for discovery has been submitted to the German Court.

As stated above, in August 2006, German tax authorities commenced a review of Chemtec's and SGH's taxes for the period of 2001 to 2004, which included a tax transaction related to a write down of the value of shareholding of Chemtec. Dkt. No. 1, Mortiz Decl. at ¶ 5.  The audit was completed in November 2007.  *Id*.  Minatec expects that the audit will result in a disallowance of previous deductions and, thus, a substantial liability to Chemtec, which will be imposed upon its current owner, Minatec.  *Id*.  German local tax authorities are empowered to collect taxes and initiate investigations into violations of the German tax code.  Dkt. No. 16, Brodersen Decl. at ¶¶ 3-4.

Ultimately, the investigating arm of the tax agency can render a finding which may be conveyed to the assessment branch that has the authority to issue a tax assessment notice. *Id*. at ¶¶ 12-13. An appeal can be taken from that assessment and that appeal can be subsequently challenged in a separate action in German Tax Court. *Id*. at ¶¶ 13 & 15. Throughout this audit process, SI Group has been permitted to be an observer of the proceedings. Dkt. No. 14, Kleinhesterkamp Decl. at ¶¶ 4-7.

### C. The Nature of the Petition

By this Petition, Minatec seeks an order directing SI Group to disclose and produce (1) all documents, whether written or in electronic format, concerning or relating to matters which are the subject of the German tax audit, including all correspondence, (2) all documents related to the handling of the profit pooling agreement and tax losses, (3) Adam Jameson and Rick Barlow, SI Group executives, and the author of the "concealed tax memo" for deposition as to the tax matter, (4) all documents, no matter the format, concerning and related to DiBoc and its labeling in Europe and the United States, including all internal correspondence to which SI Group and Chemtec is a party, and (5) executives Jameson and Barlow or any other person with knowledge of the labeling of DiBoc for deposition. Dkt. No. 1, at ¶¶ 14-19.

Discovery in Germany cannot be initiated by the parties without an edict from the German court. Dkt. No. 12, Mueller Decl., Ex A, German Tax Code (ZPO) at §§ 142, 143, & 363.[5] Minatec

---

[5] Salient portions of the ZPO state that "[t]he Court may order that a party or a third party shall produce the documents or other records in its possession[.]" ZPO at § 142(1). "Third parties shall not be obliged to produce documents to the extent that they cannot be reasonably expected to produce the documents or that they are entitled to refuse to give testimony in accordance with §§ 383-385, 386-390 shall apply mutatis mutandis." *Id*. at § 142(2). "The court may order that the parties produce the records in their possession, to the extent that these records consist of written documents which relate to the hearing and the decision on the matter." *Id*. at § 143. "If the taking of evidence is to be performed abroad, the presiding judge shall request the competent authority to take the evidence." *Id*. at § 363(1). Dkt. No. 12, Mueller Decl., Ex. A.

argues that this discovery would be relevant to the pending German Action, the German tax audit, and conceivably, any subsequent litigation related to the highly toxic DiBoc.

## II. DISCUSSION

### A. General Legal Principles

A district court is authorized, but not required, to grant a § 1782(a) discovery request when the following three statutory elements have been met:

> 1. the person from whom discovery is sought resides or found in the district of the district court to which the application is made;
> 2. the discovery is for use in a proceeding before a foreign tribunal; and
> 3. the application is made by a foreign or international tribunal or any interested person.

*In re Ishihara Chem. Co.*, 251 F.3d 120, 124 (2d Cir. 2001) (citing 28 U.S.C § 1782(a)).[6]

The twin aims of the statute are to provide efficient assistance to participants in international litigation and encourage foreign countries to provide similar assistance to our domestic courts. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004); *Euromepa S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998) (cited by *In re Ishihara Chem Co.*, 251 F.3d at

---

[6] The text of the Statute states that

[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

124); *accord Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) (citing the Ninth Circuit's similar findings in the underlying case, 292 F.3d 664, 669).

If the three threshold requirements are met, the Court must then exercise its discretion as to whether and to what degree § 1782(a) discovery would be allowed. *Intel Corp v. Advanced Micro Devices, Inc.*, 542 US. at 264 ( further noting that "a district court is not required to grant a §1782(a) discovery application simply because it has the authority to do so") (citations omitted).  To assist the  district court in exercising its discretion, the Supreme Court crafted four factors relevant to the inquiry, which are summarized as thus:

> (1) Whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";[7]
>
> (2) "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States"; and
>
> (4) whether the discovery requests are "unduly intrusive or burdensome."

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf,* 2006 WL 3844464, at *4 (S.D.N.Y.  Dec. 29, 2006) (citing *Intel Corp. v. Advanced Micro Devices,* 542 U.S. at 264-65) (quotation marks in the original).

The Second Circuit has consistently ruled that it is far better to provide federal court assistance than none at all. *Schmitz v. Bernstein Liebhard & Lifshitz*, 376 F.3d at 83 & 85 (recommending that if there are any misgivings the district court could issue a closely tailored discovery order rather than

---

[7] Until *Intel*, the courts within the Second Circuit did not make any distinction between a participant to the foreign litigation and a nonparty, and thus the element of being a participant in the foreign litigation did not factor significantly in either denying or granting a § 1782 discovery request. *See, e.g., In re Edelman*, 295 F.3d 171 (2d Cir. 2002); *In re Metallgesellschaft AG*, 121 F.3d 77 (2d Cir. 1997); *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095 (2d Cir. 1995).

simply denying the relief out right); *In re Metallgesellschaft*, 121 F.3d 77, 80 (2d Cir. 1997).

It is now incumbent upon us to determine if this Application meets the statutory thresholds and whether the four *Intel* factors tip auspiciously to Minatec.

### B. Analysis

In terms of the statutory thresholds, Minatec has met those criteria.  SI Group maintains its primary office within the Northern District of New York and obviously has been found within our jurisdiction.  The requested discovery is being sought for pending litigation and administrative proceedings in Germany, and possibly in this regard to potential litigation related to the potential consequences of mislabeling DiBoc.  And, it is unchallenged that Minatec is an interested party.[8] We now turn to see if the *Intel's* four discretionary factors collectively weigh in Minatec favor.

1.  Participant in the Foreign Litigation

The first discretionary factor to be considered is whether the person from whom discovery is sought is a participant in the foreign proceeding.  Regarding participants in a foreign proceeding, the Supreme Court observed, "the need for § 1782(a) aid generally is not as apparent . . .[because a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. at 264.  Conversely, " nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States and may be unobtainable absent § 1782(a) aid." *Id*.

SI Group, who is the complainant in the German Action, is obviously a participant in that

---

[8] We have not been asked to address whether we are authorized to direct disclosure of documents outside of this District or the United States.  Had we been asked, we would have found that finding SI Group within our district is  the only nexus necessary for us to be able to compel production of all documents.  *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4-5 (S.D.N.Y. Dec. 29, 2006) (citations omitted).

foreign proceeding. However, in the underlying German tax audit, SI Group is not deemed to be a participant since it had divested its ownership to Minatec prior to the audit, although the audit covers the period of 2001 to 2004 when Chemtec and SGH were owned by SI Group. Dkt. No. 1 at ¶ 28. Yet, SI Group was allowed to be an observer of the tax proceedings. Even though SI Group is a participant and Messrs. Jameson and Barlow are chief executives in that company, Jameson's and Barlow's designation as participants cannot be as easily determined. It can be argued that seeking the depositions of SI Group's executives' Jameson and Barlow, who are current employees though not named parties to the German Action, for all intents and purposes is seeking discovery from SI Group, Minatec's opponent in the German Action. *See Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d at 85. SI Group further explains that all of the documents and evidence being sought by this process is within the control of SI, including these executives' depositions, and can be discovered through the German Action. Dkt. No. 11, Mem. of Law at p. 10. Whether, however, these executives can be produced for depositions by the German court is subject to debate. *See infra* Part II.B.2. But, here Minatec asserts that Jameson, Barlow, and a person in charge of DiBoc issues are not considered participants in the context of this factor. If we were to extend the reasoning of *In re Imanagement Services Ltd.*, 2005 WL 1959702, at *6 (S.D.N.Y. Aug. 16, 2005), where former employees of a participant in foreign litigation were deemed nonparticipants under the statute, and we drop the distinction between former and current employee, it can also be argued that Jameson and Barlow are not participants in the scheme contemplated by the statute, Supreme Court, and the Second Circuit. Nonetheless, Jameson, Barlow and a person in charge of DiBoc issues are not participants in the German tax audit. And should there be future litigation regarding DiBoc and any possible injuries it may have caused, these knowledgeable persons would be nonparties. *See infra*

part II.B.2.

Minatec also asserts that a "party to the foreign proceeding factor" is relevant only when the foreign court has the authority to compel foreign nationals outside of the foreign forum to participate in discovery. Dkt. No. 1 at ¶ 29. Minatec argues that the German court does not have that authority. Clearly, the parties differ as to this contention, and a reading of the ZPO may suggest otherwise. *See supra* note 5 & infra Part II.B.2.[9]

Under these circumstances, especially when focusing upon the German tax audit, we cannot find this factor in favor of either party. Thus, this factor remains neutral.

2. Taking Account of the Foreign Tribunal and its Receptivity to Federal Court Judicial Assistance

As to this discretionary factor, *Intel* instructs us that we "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance." 542 U.S. at 264. That is, we may "look to the nature, attitude and procedures of that jurisdiction as 'useful tool[s]' to inform our discretion." *Schmitz v. Bernstein Liebhard & Lifshitz*, 376 F.3d at 84 (citation omitted). In our case, there are two foreign tribunals we must consider: the German Action and the German tax audit. Undoubtedly, these two tribunals are invariably interlocked with the result of the administrative agency's findings of tax liability and possible imposition of a tax assessment playing a potential consequential role in the German Action.

Everyone concedes that the German Action is the type of litigation that should be considered

---

[9] This provision of the ZPO is not clear whether the German court can compel either a party or nonparty's deposition, who are outside of its jurisdiction or that it may have to resort to a foreign court, such as our district court, to ask that § 1782(a) or similar statute be employed.  *See* Müeller Decl., Ex. A, ZPO at § 363 ( "If the taking of evidence is to be performed abroad, the presiding judge shall request the competent authority to take the evidence.").

under this prong of the *Intel* discretionary factors. Such concession is not extended by SI Group to the German tax audit however. SI Group goes to extraordinary length to minimize the significance of the tax audit, merely appraising the process as a local investigation that does not rise to the level of a foreign court or judicial proceeding. Considering the comprehensive instruction from the Supreme Court in *Intel* on this very issue, we respectful disagree with SI Group's minimalist characterizations of the tax audit's relevance as a foreign tribunal worthy of consideration under § 1782(a). Indeed, the law pronounces administrative agency's investigation, such as this tax audit, on equal footing with the Franfurt Court.

In reviewing the legislative history of § 1782(a), the Supreme Court noted that when Congress introduced the word tribunal into the statute in 1964, it wanted "to ensure that 'assistance in not confined to proceedings before conventional courts but extends also to 'administrative and quasi-judicial proceedings.'" *Intel*, 542 U.S. at 249. In doing so, the notion of foreign and international tribunals is expanded beyond the conventional connotation to simply court proceedings. Repeating again the legislative history, *Intel* states that "'[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts[.]'" *Intel*, 542 U.S. at 258 (quoting, *inter alia*, S. Rep. No. 1580, at 7-8, U.S. Code Cong. & Admin. News 1964, pp. 3782, 3788). What is most critical is whether the statute will be assisting the "first-instance decisionmaker," *Id*. The Supreme Court also rejected a view expressed by the Second Circuit in *In re Ishihara Chemcial Co.*, 251 F.3d at 125, that § 1782 comes into play when the adjudicative proceedings are "pending" or "imminent." *Id*. at 259. The Supreme Court held that "§ 1782(a) requires only that a dispositive ruling by [an adjudicative proceeding], reviewable by . . . courts, be

within reasonable contemplation." *Id*. (citations omitted).  In this respect, the German tax audit, an administrative proceeding that can be reviewed by a German court, fits firmly within the statute's purview.[10]

Next, we need to determine if the German court would be receptive to federal court assistance.  On this topic, both parties leveled a cannonade of legal affidavits, with a spiraling array of competing legal pontification, among other things, as to whether (1) discovery in the German court would encompass these very requests and would exercise jurisdiction over the parties to compel such production; (2) the German discovery scheme is exhaustive or very limited; (3) the evidence, if accepted, would be admissible or not; and, (4) to what extent the relative prominence of this type of evidence is throughout the tax investigation process.  The disagreement between the parties is substantial.  Although the effort to provide this Court with this various perspectives interpreting German law is laudatory, both parties should have known that both the Supreme Court and the Second Circuit have repeatedly denounced such a practice and that such endeavor may be meaningless.

In rejecting a petitioner's argument as to whether there needs to be corresponding provisions between the foreign proceedings and United States law, which had broader implication in terms of comparing discovery approaches, the Supreme Court cautions us that § 1782 "does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here.  Comparisons of that order can be fraught with danger." *Id*. at 263.  The Second Circuit goes much further than the Supreme Court in admonishing courts from engaging in "speculative forays into legal territories unfamiliar to federal judges[,] that being interpreting another country's laws and

---

[10] In light of *Intel*, SI Group's extensive discussion and heavy reliance upon *In re Letters Rogatory Issued by Director of Inspection of Government of India*, 385 F.2d 1017 (2d Cir. 1967) is misplaced and not persuasive.

statutes. *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996);  *In re Imanagement, Ltd.*, 2005 WL 1959702, at *5 ("speculative foray into unfamiliar legal territory").  We shall heed the advice of District Judge Barbara Jones who properly deferred to the Second Circuit's instruction that the court should "consider only authoritative proof in considering these factors . . . [such as] found to exist where the representative of a foreign sovereign has expressly and clearly made its position known." *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6 (citing, *inter alia*, *in re Euromepa*, 51 F.3d at 1099-1100).  Judge Jones continued:

> It is unnecessary for me to further explore these polar differences in expert opinion, because after having carefully reviewed the German court decisions and the experts' respective affidavits, in the end the Court is left without an answer as to which expert is correct.  And, as the Second Circuit has instructed, the Court is not expected to declare a winner in this "battle-by-affidavit of international legal experts." *See Euromepa [S.A. v. R. Esmerian, Inc.],* 51 F.3d at 1099 ("[W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges.").

*Id*.; *In re Grupo Quamma*, 2005 WL 937486, at *2-3 (S.D.N.Y. Apr. 22, 2005).

Little can be gleaned from conflicting and bias interpretations of the law which becomes a "consuming, and inherently unreliable method of deciding section 1782 requests [that] cannot possibly promote the 'twin aims' of the statute." *Euromepa S.A. v. R. Esmerian, Inc,* 51 F.3d at 1100.  Under this tutelage, we will not be pulled into this legal tug-of-war and, accordingly, we decline to consider either parties' affidavits as to this issue.

Returning to our main task, whether the German court and the taxing authority would be receptive to federal court assistance, our inquiry shifts to whether the foreign tribunals would be "offended" by our judicial aid.  We have no dispositive German authority objecting to federal court ordered discovery.  Since we were not presented with authoritative declarations from the forum country's judicial, executive, or legislature specifically addressing the use of evidence that possibly may be gathered by this Court, we will rely upon the statute's "overarching interest in providing

*-13-*

equitable and efficacious procedures for the benefit of tribunals and litigants involved in the litigation[.]" *Id*. (internal quotation marks and citations omitted). Nor are we persuaded that even if the foreign tribunal did not have an opportunity to decide the discovery issue, as SI Group contends is occurring here, we should deny this § 1782 Application on this account. *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997). There is no reason to assume that a country that has not adopted a discovery requirement as extensive as ours would be either offended or reject the assistance. *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998) (cited in *Intel*, 542 U.S. at 260-61). And, even if a foreign tribunal may be too hesitant to order the level of production sought here, this does not mean that there is any resistance to receiving such evidence collected under this statute. *Intel*, 542 U.S. at 261-62. But, if its learned later that the foreign tribunal, such as this German court and administrative body, opposes our assistance then that tribunal has within its right to exclude the discovered material. *Euromepa S.A. v. R. Esmerian Inc*., 51 F.3d at 1101; *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *7 ("The availability of that corrective measure assuages any concern [the court] may otherwise have had on the issue."); *cf., In re Microsoft Corp*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006) (noting that the European Commission, as well as a governmental prosecutor, specifically expressed that they were not receptive to the federal court intervention).

Based upon the record before this court, exclusive of the dueling parties' Declarations, we find neither any rejection nor offense taken by the German tribunals to a stateside discovery order, and we find this factor in Minatec's favor.

3. Does the Request Conceal an Attempt to Circumvent Foreign Proof-Gathering Restrictions?

The Supreme Court recommends that "a district court consider whether a § 1782(a) request

conceals an attempt to circumvent foreign proof-gathering restriction or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  Ostensibly, this factor is calculated to shield against an abuse or end run around a foreign jurisdiction's policies. Regarding this factor, SI Group asserts that "Minatec's application is a transparent attempt to circumvent German proof-gathering restrictions and other policies of Germany." Dkt. No. 11 at p. 10.  In support of this assertion, SI Group relies upon its group of legal affidavits that cumulatively express Germany's prohibition to discovery of this nature as being contrary to its policies.  As we noted above, we are disinclined to consider these affidavits since they lack the ring of judicial authority on the matter.  But speaking of circumvention, Minatec countercharges that SI Group's rush to the German court was, in fact, an effort to stymie its previous efforts to secure discovery on both the tax and DiBoc issues.  These counterpoints are of little moment here.  This Court could not glean from the statute - ZPO - any suggestion that a party has to seek discovery first from the German tribunals. *Intel*, 542 U.S. at 252-53 ("We now hold that § 1782 does not impose such a [foreign discovery] requirement.").  Neither is there a foreign tribunal exhaustion requirement nor any explicit direction that the admission of evidence in either German tribunal is controlling in determining whether discovery will be permitted. *See generally Intel*, 542 U.S.  241   The primary issue for us is whether Minatec is pursuing this discovery in bad faith.  Other than SI Group's contentions, we find nothing within this record to support that Minatec is seeking this information with less than a good faith belief that § 1782 discovery would be helpful to the foreign tribunals and itself.  Thus, this factor weighs favorable for Minatec.

### 4.  Whether the Request is Unduly Intrusive or Burdensome

The remaining *Intel* factor for us to consider is whether the § 1782(a) Request is unduly

intrusive or burdensome.  SI Group complains that Minatec's Request is not reasonably tailored for either of these German tribunals and thus unduly intrusive and burdensome.  SI supports its complaint by alleging that Minatec already has all of these documents by virtue of taking control of Chemtec and SGH.  First, whether Minatec has documents that may be related to these foreign proceedings is not controlling.  What is controlling are the documents SI Group may have that are pertinent to the tax issues and DiBoc and what Barlow, Jameson, and any employee who may have particular knowledge as to both issues.  Second, we respectfully disagree with SI Group's assessment.  We find the Request to be specifically and narrowly tailored to both issues - tax liability and mislabeling.  If it was not so, we have the authority to closely tailor any discovery order. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d at 83; *In re Metallgesellshaft*, 121 F.3d at 80; *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d at 1101.

SI Group claims that this discovery scheme is a one-way street and the burden of discovery falls solely and unfairly upon its shoulder without similar recourse being available to it.  In SI Group's view, Minatec is not at any risk of having to submit to the same discovery.  These arguments are also without merit.  The flexibility of § 1782(a) allows a court to be creative in fashioning relevant discovery mandates.  Consistently, the Second Circuit and the Supreme Court, have suggested that a district court could condition relief upon a reciprocal exchange of information, as such would lend parity to the disclosure mix.  *Intel*, 542 U.S. at 262; *In re Esses*, 101 F.3d at 876 (finding that a carefully crafted order for reciprocal discovery in light of the dispute is within the discretion of the court).  Here, Minatec's acknowledges that this Court has the authority to issue a reciprocal discovery order and, therefore, consents to this possibility.  *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d at 1097 (conditional discovery upon reciprocity).

Since this discovery request seeks internal documents, it is apparent that SI Group's confidential documents may be exposed unjustly. Again, the beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed. *Intel*, 542 U.S. at 266 n.19; *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *8 (granting a protective order.). Again, Minatec welcomes such a protective order inasmuch as such an order would address any legitimate concerns SI Group may invoke.

With all of these creative tools at our disposal, and finding that Minatec's Request is reasonable tailored, this final factor falls squarely to Minatec's benefit.

### III. CONCLUSION

We find that Minatec has met the statutory thresholds and the four *Intel* discretionary factors lean strongly to Minatec's favor. We further find that the twin aims of § 1782(a) are met and that this discovery will be helpful to both the German Action and the German tax audit and may encourage Germany to provide similar means of assistance to our courts. We are convinced that this discovery is relevant and will be used in either of these foreign tribunals. With the authority to direct reciprocal discovery, we will do so. And, any concerns about revealing privileged or confidential information is alleviated by this Court directing the parties to negotiate an appropriate confidentiality agreement, which will be converted into a protective order. If the parties cannot agree upon the terms of a confidentiality agreement, this Court will intercede and either assist them or impose a workable protective order.

Accordingly, it is hereby

**ORDERED**, that Minatec's Petition, pursuant to § 1782(a), Dkt. No. 1, is **granted** consistent

with this Memorandum-Decision and Order; and it is further

**ORDERED**, that SI Group shall have reciprocal discovery from Minatec, including depositions; and it is further

**ORDERED**, that Minatec and SI Group, to the extent necessary, shall enter into a confidentialilty agreement. If the parties cannot agree upon a confidentiality agreement, either party may petition the Court to intercede and help resolve any disputes relating to the agreement and/or impose a protective order; and it is further

**ORDERED**, that SI Group provide the requested documents within thirty (30) days of the filing of this Order, and produce Barlow, Jameson, and any other person with personal knowledge of either or both the tax liability issue and the labeling of DiBoc within sixty (60) days of the filing of this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Date: August 18, 2008
      Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge